**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 21, 2022**

# In the Court of Appeals of Georgia

A22A0620. CHAUSMER et al. v. GOTTLIEB et al.

MCFADDEN, Presiding Judge.

Aaron and Jaimie Chausmer appeal the order granting summary judgment to Robert and Maja Gottlieb in the Chausmers' action for damages caused to their property by the Gottliebs' fallen tree. The Chausmers argue that photographs of the fallen tree and an invoice from the business that removed it are sufficient to defeat summary judgment. We hold that although the evidence may have created a jury question on the issue of whether the tree was, in fact, damaged, it does not create a jury question on the issue of whether the Gottliebs should have known of such damage. So we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). A defendant may demonstrate that he is entitled to summary judgment

> by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). Our review of the grant of summary judgment is de novo, and we "view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." Id. at 624 (1) (a) (citation and punctuation omitted).

So viewed, the record shows that the Chausmers' property adjoins the Gottliebs' property; a six-foot privacy fence separates their back yards. In an August

2

2020 storm, a tree from the Gottliebs' back yard fell into the Chausmers' back yard and hit their house.

Aaron Chausmer hired Northside Tree Service to remove the tree. The invoice from Northside Tree Service states that "[t]here is approximately 4[ ]feet of decay at the base of trunk from carpenter ants. Approximately 20 feet higher is a hole in the trunk that collected water and rotted out that upper part of the tree."

In addition to the invoice, the Chausmers point to three photographs of the tree after it fell, which they contend show damage. But in his deposition, Robert Gottlieb testified that prior to its falling, the tree did not look as it did in the photographs and that the damage that the photographs depicted was damage from the tree falling.

Robert Gottlieb further testified that, a year before the incident, an arborist had evaluated the health of his trees, including the one that fell. After that evaluation, Robert Gottlieb monitored his trees, including the one that fell. He testified that he looked at that tree when he walked by it several times a week. He saw nothing out of the ordinary. He testified that the tree looked the same the day it fell as it had looked when the arborist inspected it the year before.

The Chausmers offered no responsive testimony. So this is not a case where "the parties tell two different stories, one of which is blatantly contradicted by

3

[photographic or video evidence]." *Scott v. Harris*, 550 U.S. 372, 380 (III) (A) (127 SCt 1769, 167 LE2d 686) (2007) (quoted in *Smith v. Wal-Mart Stores East, LP*, 330 Ga. App. 340, 348 (2) (b) (ii) (765 SE2d 518) (2014)).

The Gottliebs have demonstrated that they are entitled to summary judgment by "establishing from the record an absence of evidence to support [the Chausmers'] claims[,]" *Cowart*, 287 Ga. at 623 (1) (a), because the Chausmers have not pointed to evidence that a layperson should have known the tree was diseased.

A property owner who knows or reasonably should have known that a tree is "diseased, decayed or otherwise" dangerous has a duty to remove the danger. *Willis v. Maloof*, 184 Ga. App. 349, 350 (2) (361 SE2d 512) (1987). If he fails to do so, he may be held liable for damages caused by the tree's fall. Id.

A landowner must inspect trees with "visible, apparent, and patent" decay. *Wesleyan College v. Weber*, 238 Ga. App. 90, 93 (517 SE2d 813) (1999); accord *Cornett v. Agee*, 143 Ga. App. 55, 57 (237 SE2d 522) (1977) (limiting liability for decayed tree damage to "patent visible decay"). Whether a tree has patent, visible decay is judged from the perspective of a layperson, not "an expert trained in the inspection, care and maintenance of trees." *Ga. Dept. of Transp. v. Smith*, 314 Ga. App. 412, 416 (2) (724 SE2d 430) (2012) (citation and punctuation omitted),

4

overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778 n.7 (784 SE2d 775) (2016). So "[a] landowner is charged with knowledge of the dangerous condition of a tree if a layperson should have known the tree was diseased." *City of Fitzgerald v. Caruthers*, 332 Ga. App. 731, 734 (774 SE2d 777) (2015) (physical precedent only).

We hold that this case is controlled by *Willis v. Maloof*, 184 Ga. App. at 349. In *Willis*, we reversed the denial of the defendant's motion for a directed verdict, holding that the plaintiff "presented no evidence to support a finding that defendant had breached any duty to maintain the tree." Id. at 350 (2). The defendant had testified that "he worked around the base of the tree often as he cultivated a vegetable garden in his yard, near the tree, almost every year [and, like the Gottliebs,] denied any knowledge that the tree was diseased and denied seeing any evidence which would lead him to suspect the tree was unhealthy." Id.

The plaintiff's expert, "who inspected the tree after it fell, testified [that] at least three visible conditions indicated to him that the tree was diseased and posed a hazard," including that the bark at the base of the tree curved under; the side of the tree had a cavity; and fungus was growing on the bark. Id. We noted that "[t]he expert testified that in his opinion the average person's 'attention would have been drawn'

5

to these conditions." Id. Nonetheless, we held that "*[e]ven assuming defendant should have noticed these conditions, no evidence was presented from which a jury could find that defendant should reasonably have known the tree was diseased*." Id. (Emphasis supplied). In other words, we concluded that the evidence would allow the jury to "find that the tree was in fact diseased [but not that] a layman should have reasonably known the tree was diseased."Id.

The Chausmers, too, presented evidence from which a jury could find that the tree was diseased, decayed, or constituted a dangerous condition. But they point to no evidence that "a layman should have reasonably known the tree was diseased[, decayed, or constituted a dangerous condition]." *Willis*, 184 Ga. App. at 350 (2). Cf. *Wesleyan College*, 238 Ga. App. at 92-95 (whether defendant had a duty to cut down pine tree was a jury question where tree had a four-foot-long cavity observable to a layperson; workers who removed tree testified that the tree appeared to be dead or rotten, had bark falling off, and had no green needles; tree was in an area of blighted trees; *and witness "testified that he gave [defendant's agent] notice of the blighted trees, if not the actual tree that fell"*) (emphasis supplied); *Cornett*, 143 Ga. App. at 55 (1) (affirming judgment for plaintiff where tree trunk had visible rot; tree was partially dead; and *"the situation ha[d] been called to the owner's attention with*

6

*advice to remove it"*) (emphasis supplied); *City of Fitzgerald*, 332 Ga. App. at 734 (city's admission that it did not document every complaint about hazardous trees and testimony of city's director of public works, a layperson, that tree was in a declining or dying state was sufficient to create jury issue on whether city had actual or constructive knowledge that tree was dangerous).

The three photographs on which the Chausmers rely do not create a jury question on the issue of the Gottliebs' constructive knowledge of the tree's dangerous condition. "While the photographs may provide some basis for inferring age, without context or explanation, any conclusion as to the age of the alleged defect . . . would be mere speculation. The photographs only show the condition of the alleged defect in the [tree] at one point in time . . . after the [tree's fall]." *City of Macon v. Brown*, 343 Ga. App. 262, 265 (807 SE2d 34) (2017). See also *City of Brunswick v. Smith*, 350 Ga. App. 501, 504-505 (829 SE2d 781) (2019) (2014 Google Street View photograph of defect that allegedly caused plaintiff's 2015 crash did not create a question of fact on the issue of the city's constructive knowledge of defect in the absence of other evidence that the defect had existed over time); *City of St. Marys v. Reed*, 346 Ga. App. 508, 510 (816 SE2d 471) (2018) (photographs of long crack in sidewalk that were taken at some point after plaintiff's trip and fall did not support

7

conclusion about age of alleged defect). The Chausmers' photographs "do not establish how long the [condition] took to develop and worsen, and [there is no] additional evidence to contextualize or lend support to [their] arguments regarding the [condition of the tree before its fall]." *City of Macon*, 343 Ga. App. at 265.

The trial court did not err by granting the Gottliebs' motion for summary judgment.

*Judgment affirmed. Gobeil, J, concurs. Land, J., dissents*.


# In the Court of Appeals of Georgia

A22A0620. CHAUSMER et al. v. GOTTLIEB et al.

LAND, Judge, dissenting.

Because the photographic and other evidence in this case raises a jury question as to whether the defendants should have known of a tree's exposed and diseased trunk before it fell on their neighbor's house, I dissent.

The majority correctly states well-settled law that a landowner has a duty to inspect trees with "visible, apparent, and patent" decay. *Wesleyan College v. Weber*, 238 Ga. App. 90, 93 (517 SE2d 813) (1999); see also *Cornett v. Agee*, 143 Ga. App. 55, 57 (237 SE2d 522) (1977). It is equally clear that the question whether a tree has

such decay is one for the judgment of a layperson rather than an expert trained in tree inspection or maintenance. *Ga. Dept. of Transp. v. Smith*, 314 Ga. App. 412, 416 (724 SE2d 430) (2012), overruled on other grounds, *Rivera v. Washington*, 298 Ga. App. 770. 778 n. 7 (784 SE2d 775) (2016). The majority also correctly concludes that based on this law, these plaintiffs "presented evidence from which a jury could find that the tree was diseased, decayed, or constituted a dangerous condition." Op. at 7. I agree with all of this. I part ways, however, as to the majority's conclusion that there is no evidence sufficient to raise a jury question on whether the defendants had actual or constructive notice of this tree's obviously diseased condition. Op. at 7, citing *Willis v. Maloof*, 184 Ga. App. 349 (361 SE2d 512) (1987). Because the disease, decay, and rot of this tree (which the majority concedes there is evidence of) was visible, apparent, and patent prior to its fall, I respectfully dissent.

The *Willis* decision relied upon by the majority is easily distinguishable. In *Willis*, this Court held that an expert's testimony concerning the inward curve of the bark at the base of a tree, a cavity in its side, and the presence of fungus on the bark was insufficient as a matter of law to put a layman on notice that the tree was diseased. 184 Ga. App. at 350 (2). Here, by contrast, the record includes photographs showing a swath of disease and rot extending four feet above the base of the tree ,

2

which decay plainly appears to have existed long before the fall. I take no issue with our holding in *Willis* or its recognition that there are some conditions in trees that a layman is ill-equipped to assess. However, common sense and experience equip laymen with the ability to know rotten wood when they see it, and that is exactly what the photographs show in this case. Where the parties "'tell two different stories, one of which is blatantly contradicted by'" photographic or video evidence, "'a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Smith v. Wal-Mart Stores East, LP*, 330 Ga. App. 340, 348 (2) (b) (ii) (765 SE2d 518) (2014), quoting *Scott v. Harris*, 550 U.S. 372, 380 (III) (A) (127 SCt 1769, 167 LE2d 686) (2007).

For these reasons, I believe that the trial court erred when it granted summary judgment to the defendants, and I respectfully dissent.[1]

---

[1] For additional authority supporting this dissent, one need look no further than the decisions cited in the majority opinion. *See Wesleyan College*, 238 Ga. App. at 92-95 (whether defendant had a duty to cut down pine tree was a jury question where tree had a four-foot-long cavity observable to a layperson); *Cornett*, 143 Ga. App. at 55 (1) (affirming judgment for plaintiff where tree trunk had visible rot and tree was partially dead); *City of Fitzgerald v. Carruthers*, 332 Ga. App. 731, 734 (774 SE2d 777) (2014) (physical precedent only) (city's admission that it did not document every complaint about hazardous trees and testimony of city's director of public works, a layperson, that tree was in a declining or dying state was sufficient to create jury issue on whether city had actual or constructive knowledge that tree was dangerous).

3